May it please the Court. I'm Pat Ehlers with the Federal Defender's Office here in Portland, and I'm representing the appellant in this action, Mr. Wong. Your Honors, I want to first address the briefing in the case. I did not write the brief in this case. It was written by another attorney, and our office had to take the case back after that attorney went into an in-house counsel position. So I'm coming in to do the oral argument on the case, but I didn't write the brief, and I recently just submitted a supplemental excerpt of record on Friday, and I don't know if the Court received that. We've got it. I have it anyway. All right. Thank you. With respect to one of the issues that I want to spend the most amount of time on, it's the ineffective assistance of appellate counsel issue. And I want to first turn to page 20 of the appellant's brief, because there's a problem there that I've got to take on. And what the problem is, is that the attorney that wrote that brief cited two excerpts of record 32 through 35, which are the excerpts that are dealing with the investigative memo of Bill Hammond, as well as the internal memo of Andrew Johnson, the trial attorney. And Judge Marsh, I think, rightfully said, in looking at those pieces of evidence, that those exhibits were not submitted to the post-conviction court. It's absolutely true. Those are not the pieces of evidence that should have been presented or relied upon to say that the post-conviction court had erred in its ruling. So I want to point that out first. But what I put in the supplemental excerpt of record is actually in the record and is information that the post-conviction court did have. So when you look at what the post-conviction court did with this appellate ineffective assistance of counsel claim, it's just flat wrong. The post-conviction court ruled that there was no evidence in the record related to jury misconduct. And that's just not correct. The court had the deposition of Stephen Wong, and it also had the transcript of the hearing on the motion for the jury investigation. Well, does it make a difference whether there was no evidence or there's no admissible evidence? Your Honor, I think if the court is saying that there's no evidence, I think this Court could find and should find that what the post-conviction court did was simply miss this issue. The court in the post-conviction cited to the motion that was filed by trial counsel and highlighted two words, two very important words, may have, emphasis added. And Judge Marsh points that out in his ruling as well. The criticism of the motion is that the motion is vague and it doesn't state any operative facts upon which a trial court could have allowed the jury investigation to be conducted. But that's, again, not correct. When I looked at this record, Your Honors, and I looked at the operative facts in the Hammond memo and as well as in the Andrew Johnson memo, I came to a question that I couldn't answer initially. And the question was, why is there no mention of these important critical facts related to the jury investigation, the fact that a jury investigation was done, and the fact that the jurors engaged in misconduct, that there was evidence that the jurors disregarded the court's instructions and then relied upon, at least considered, the prior condition? Well, you don't really know without getting into the internal deliberations. Someone could have said something, and then someone else could have said, the judge instructed us not to talk about it, so we're not going to talk about it. So you don't know that, and you're not allowed to get into those internal deliberations. So, you know, we've got this chicken and an egg problem that you're saying, well, you know, and that's precisely why, you know, I did a lot of trial work as a judge and as a lawyer, and there probably is jury misconduct every time. In some form or another, but then people probably did, but then we have to assume that they then listened to what the instruction was and righted themselves back. And, you know, from what you're asking, it seems to me you're saying, well, then we can always get into everything that's said, and if there's a stray comment, then, well, then we have to find out what else happened and what else happened. And, you know, how was the sausage made? That's a great point. You know, and that's exactly why they say we can't do that. Except when we're dealing with a prior conviction, and this Court has repeatedly said in cases like Vasquez, Jeffries, Dixon, and the Keating case, I think most recently, and you're not going to find this in the brief, and if I had written this brief, those cases would be there. Vasquez is there, though, and that's interesting. Vasquez isn't the greatest case on the point, but, Your Honor, I'm a trial lawyer, and I had the same reaction you did. But your trial lawyer just, you know, walked right into this and just was hammering that witness and hammering the witness, and, you know, the argument that they're making is, you know, you push, you push, you push, you invite the error, and then, you know, and they're arguing, I think, besides the fact of what she blurted out, that you asked for it, but then even if that were not the case, that they would have been able to, when you open, you know, there's that thing that something's not admissible until you open the barn door, and then once you open the barn door, then you, you know, you can make something inadmissible admissible. That was the prosecutor's argument at trial, Your Honor, and initially. Well, and it's not one without any merit. Your defense counsel there was hitting that witness pretty hard, and. . . Well, if the court looks at page 362 of the trial transcript, you're going to see the question that was asked. It wasn't the answer that was blurted out that he was convicted previously. It was really not responsive to the question. And then later in the argument. . . Well, it's not what you wanted the person to say, but it doesn't mean it wasn't. . . It sounds like it was a pretty good response. It just wasn't what we want someone to say during a trial. I don't think anybody wanted that in. There had been great effort to keep that information out from the jury's consideration because it's highly prejudicial. It destroys the fairness of the trial. The trial is over when they know that he's a previously convicted sex offender. I want to put it in context. I want to make sure I understand the context of your argument about ineffective assistance of appellate counsel. Yes. Trial counsel, after the trial was over, made a motion to interview the jurors. He didn't. He didn't. He made the motion after he did the investigation. He did the investigation first. He didn't know. . . He was five years out of law school. He didn't know the rule that you have to get in Oregon court authorization to conduct the investigation. Maybe I didn't ask my question right. After the trial is done. . . Yes. Your guy's found guilty. Yes. There's a motion made to interview the jurors. No, there's an investigation and then there's a motion. I mean, there are a lot of things that have happened, but you agree there was a trial and then there was a motion. In the meantime, there may have been a presidential election. There may have been other things, but there was a trial and then there was a motion. There was a motion following, yes. Okay. Then the judge rules on the motion, and he doesn't have anything. He doesn't have any documents from jurors. Is that true? He doesn't have any sworn affidavits from jurors, but may I answer the court's question in some more detail? Because this. . . What I'm trying to get at is what did the judge have when he denied the motion for interviews of the jurors? He had the statements of defense counsel who recounted the investigation he had already conducted before he asked the court for permission to conduct the investigation. He's got counsel's own declaration of what happened? He's an officer of the court. He's giving statements in support of the motion at the motion hearing. That's what I attached on Friday was this transcript. I understand the law in Montana to be that's not enough. This is in Oregon, Your Honor. Oh, Oregon. I mean, that's not enough under the law in Oregon. Well, Your Honor, I think at this point. . . Is that true? I mean, is that. . . No, I don't think that's necessarily the law in Oregon. But I think that what Andrew Johnson was doing was trying to provide the court with information. Now, is there an ineffective assistance of trial counsel claim in this as to Andrew Johnson for failure to adequately argue the motion for jury investigation? There's not, and there should be. But Andrew Johnson did provide the court with the operative facts. I'm not making myself clear. Okay. Your complaint is that appellate counsel was ineffective in not appealing the judge's ruling. That's correct. My question to you is he wouldn't have won such an appeal because he didn't have the goods at the time. No, Your Honor, I don't agree with that. I think that had Lewis Miles. . . Lewis Miles could have raised this issue and relied on the motion hearing to argue that the trial court was wrong for not permitting the defense counsel to go further to obtain the affidavits that would have supported the operative facts he provided the court at the motion hearing. Now, the problem with that is if you look at Lewis Miles' declaration or affidavit from the post-conviction, he says, and I wanted this court to know this, he says that he reviewed the entire record before making the decisions he made in the case. The problem is he didn't have the record at that time. Now, the motion hearing on Andrew Johnson's motion for jury investigation wasn't obtained until well after the direct appeal was completed, and Lewis Miles didn't ever review that because David Carlson, the post-conviction. . . What does that have to do with the price of beans? Well, I think it's quite significant, Your Honor. The appellate counsel attests in the post-conviction. . . So are you saying the appellate counsel is a liar? I'm saying he's very inaccurate about what he did because he said he reviewed the entire trial record, and he couldn't have, he didn't have the transcript of the motion hearing. I had a hard time finding it. I had to talk to opposing counsel just to try to track this down. As I came in late to the case, it's tucked behind the void here because that piece of the transcript, as well as the motion hearing and some other pieces of the record, weren't obtained until post-conviction counsel got those pieces of the record. And then, you know, with respect to the post-conviction judge, that post-conviction judge had in the record, evidence in the record, and the Court says there's no evidence in the record, there's the motion hearing transcript of what transpired at the motion for jury misconduct, as well as, if you look at Respondents' Exhibit 139, which is in the supplemental ER, and on page, I believe it's 32, Stephen Wong lays out in his own very sad way, he lays out all of the operative facts that are actually in the Hammond memo and in the Andrew Johnson memo. Well, let me ask you, what authority allows us to inquire into the juror's internal deliberations? You're not looking at the internal deliberations of the jury when you're looking at a claim like this. I had the exact same reaction you did until I found Keating and then went back and looked at Jeffries v. Bloggatt, which is Jeffries 3. If you look at that case, I was amazed. There's an exception carved out for prior convictions. And when you look at this, the prior convictions, even if they're coming from another juror inside the jury deliberation room, the fact of that happening, that conduct, in and of itself can raise a claim for a new trial based on jury misconduct. We're never going to ask, and we don't know, and this Court's determined repeatedly that it's not relevant to the inquiry to determine what reaction the jurors had to the prior conviction. It's just the fact that it entered the jury's consideration. It was brought to them in the jury room. And in this case, we know that this group of jurors who decided a 34-year sentence for this man in a he-said-she-said case heard that he was a prior sex offender and disregarded the Court's instructions because they were discussing it. That's an unfairness that has to be addressed. That's why when I looked at the record, Your Honors, I couldn't understand how the post-conviction Court could have concluded that there was no evidence in this record of those facts at the time the Court made that decision. I should know the answer to this, but I do not. If a court, Oregon court, were to find juror misconduct, is that structural error such as there's automatic reversal, or does the Oregon court then look to see whether it's harmless error? Your Honor, I've been looking at this issue. The short answer to that question is I think it would be structural error, but I've been looking. I want a yes or no, and the answer is apparently you don't know. I don't know. I don't know because I've been looking at it, Your Honor, from the Ninth Circuit's perspective, and what the Ninth Circuit does, at least in the habeas context, is we're looking at this as whether or not it had a substantial and injurious effect on the jury's verdict under Brecht, and if you look at that, I think if we could get back. But this is an AEDPA case, so we've got to filter it through AEDPA, and this has already gone through a PCR court in Oregon, so the question is not whether we would ourselves look at it this way under Brecht, but whether or not the Oregon court was unreasonable in concluding this under Brecht. Right. And I think what this. . . There are a lot of layers here that you've got to get through, and I'm not convinced you can get there. Well, I will say this, Your Honor. Here's the layer I can get through with respect to this issue, that the postconviction court was wrong. It was an unreasonable determination of the facts in light of the evidence presented under 2254 that this postconviction court says there's no evidence in the record. Judge Marsh did the same analysis. The motion's too vague. The evidence isn't there. There's no evidence. That's not true. So if this case went back, it would be reviewed under a non-AEDPA standard. This Court could either remand to Judge Marsh for considerations in light of an analysis without 2254 overlay, or this Court could find that there's enough evidence at this point with respect to this claim, now that the supplemental is in and you're looking at it, that you could find enough basis to grant relief in the form of a new appeal for Mr. Wong to the Oregon court. Tell me specifically, what did the state judge have? The state judge had the motion, Petitioner's Exhibit 111, and it's in the record here as well. It's just the motion. It's a bare motion that says information has been brought to his attention that the jurors may have considered information. All the judge had? No, that's not all the postconviction. That's what I'm asking you. What did the judge have? He told me he had a motion. Is that all he had, and you said no? No, he had the transcript of the motion of Andrew Johnson arguing the motion, and he had the deposition of Stephen Wong, and he had all the operative facts in front of him. What did Wong's deposition say? Wong's deposition on page 32, Respondents' Exhibit 139, says everything that the Hammond memo and the Andrew Johnson memo say, that there was jury misconduct. I don't have personal knowledge of it. He's reading what someone. His lawyer told him. He got it from his lawyer. Let's take that off the table for a second, since Wong is just repeating what someone else told him. What's your best piece of evidence that the state judge had? Andrew Johnson, because he actually talked to the jurors. He actually talked to one of the jurors. What did Andrew Johnson say to the judge? Steve, I'm out of time. Andrew Johnson told the judge that he had investigated with his investigator, Bill Hammond. Juror contact had been made. Hammond learned that jurors had considered Stephen Wong's prior conviction, that Andrew Johnson also spoke directly to another juror, that that juror indicated that they had considered the prior conviction. They knew he was a previously convicted sex offender. And this is the declaration of Johnson? This is the Johnson, the transcript of the motion hearing where Johnson's relating that information to the trial court. This is in front of the state PCR court? Yes, Your Honor. So based on that information, the PCR court nonetheless denies relief? Yes, Your Honor. Got it. Thank you. May it please the Court, Counsel. I wanted to start with the record, please. I'm sorry. Oh, Ryan Kahn for the defendant in this case. I wanted to start sort of where opposing counsel left off. From the State's perspective, from the defendant's perspective in this case, it doesn't really matter what evidence was before the postconviction court, what evidence wasn't before the postconviction court, because the issue boils down to a legal issue in Oregon. And it's an issue, Judge Callahan, that you referred to in your questioning. Under Oregon law, and this is not just an Oregon rule. This is a rule in the Federal system, too. You cannot question jurors. You can't have jurors testify about deliberations, things that went on during their deliberations. So to the extent that there was discussion, to the extent that some jurors testified or said, you know, oh, yeah, some of the jurors mentioned this. And I want to be clear. None of the evidence in the record also, as a side note, says that they considered the evidence. It says that it came up and some of the jurors talked about it. So that's a side note. Getting back to the legal issue, though, is that the distinction that I think opposing counsel is going for, and he's citing Vasquez and Jeffries and some other cases, is the exception to the rule that you can't ask the jurors questions about this is if there's evidence that comes extrinsically, that does not come through, that isn't sort of washed through the trial. So there's a difference between somebody blurting out something at trial, the court saying objections sustained, don't consider that. At that point, you don't get to question the jurors about whether they did or not, because that's just part of their deliberations. What the cases talk about and what Vasquez and the other cases that opposing counsel has relied on or has talked about is when a juror goes outside of that, maybe goes over to the library and does research on their own and then brings that information into the jury. Like if they went on the computer and they saw the person listed under Megan's Law or something like that, and they could see that they were a sexual offender or they had to register under SORNA or something because of prior offenses. Exactly. And they brought that in, then that would be something under Oregon Law and under federal law as well that you would be able to get some evidence from the jurors about, because it's something that never came through trial, was never washed through trial, and it's extrinsic evidence from outside of their deliberations. But you're telling us that's not the rationale that the State judge used, is it? Well, the State judge's ruling, the State judge, the post-conviction judge said counsel didn't raise this claim. It wouldn't have been a valid claim. So in the general sense, yes, I think that the post-conviction court was saying that. There really wasn't any evidence that the jurors did this. It was just counsel's allegation or something along those lines. Well, and that's like the last line in the post-conviction court's ruling, and I think that's where Mr. Ehlers comes in. He says there really was evidence. Right. And I guess what I'm saying, I have two responses, is that, one, if you read the post-conviction court's ruling as a whole, I don't think the post-conviction court is hanging its hat on the fact that there was no evidence of this particular thing. That might have been the easy way for the post-conviction court to rule, but even if you get by that, you still have to get to the question that as a matter of law in Oregon and in other states in the federal system, even if this evidence had been in the record, even if the post-conviction court had expressly said, yes, there was evidence in the record to show that his prior conviction came up during deliberations, it would not be a basis for inquiring of the jurors and getting evidence from the jurors about it because it's part of their deliberations. Well, is there a difference between no evidence and no admissible evidence? That's part of it, Your Honor. I think the other part of it is kind of a semantic issue, is there really was no evidence of juror misconduct because under the law, juror misconduct isn't just jurors talking about something that the court told them on the record, don't talk about this, don't consider this. It's extrinsic evidence that comes in from outside of the record that nobody is aware of. So the example, again, if you go on Wikipedia and you find out that this particular defendant had been convicted of a crime before and you come back to the jury the next day and you go, hey, I did some Wikipedia research and it turns out this defendant had been convicted before, that's the type of thing that you can question jurors about. If it comes out at trial and the court says, objection sustained, don't consider that, that's not something you can question the jurors about. The other aspect of it, so just to be clear on that, there is no exception for prior convictions. Counsel said that there's an exception to the general rule for if the jury is considering prior convictions, that's not true. The cases that he cited just adhere to the same distinction that I've been talking about. Let me ask you this, and I'm picking up on Judge Callahan's question. She asks whether there's a distinction between there's no evidence and there's no admissible evidence. And I think that might be a plausible reading of what the PCR court did, like, okay, you've got me a lot of hearsay, but I don't consider that to be evidence. But it's possible to read the Oregon court's opinion differently. I'll just read you the language. The issue of jury misconduct is not an appropriate appellate issue. There is no evidence in the record of jury misconduct in the trial court. Petitioner's trial attorney filed a motion with the court to allow him to contact jurors. He based this on his statement that, quote, it had been brought to my attention members of the jury in this case may have, et al. discussed during deliberations a statement made by the witness that they were instructed to disregard the court. Motion was properly denied. Well, the language that this Court uses to say there was no evidence is kind of suggests that they haven't read those affidavits or they've forgotten about them. Well, and they weren't actually affidavits. It was and from the post-conviction court standpoint, the documents that Petitioner has referred to in his brief really were not in the post-conviction record. What Petitioner has done now since, you know, in preparing for oral argument is found other evidence. That's sort of another aspect of this. Evidence that was in front of the PCR court. Yes, that was technically in front of the PCR court. What do you mean technically? Well, technically what I was going to finish is that nobody ever brought that to the post-conviction court's attention. Nobody ever brought it to the district court's attention. It's basically a new argument that's coming up for the first time here, because it wasn't even in the appellant's brief. But I wanted to get to one other thing. But it was in the record in front of the PCR court? The transcript of the motion hearing, the motion to contact the jurors was in the record. Yes. The deposition that he's referring to was in the record. What was not in the record is the investigator's report that he's referring to in the blue brief. That was not in front of the PCR court. That was not. And the memorandum in the blue brief was not in the record either. Neither of those two things were in front of the PCR court. Neither of those were. Okay. But I wanted to point out, because it's easy to get bogged down in this, and ultimately it just doesn't matter, because of, in addition to the legal reason that I've talked about, is that when, and this Court has said a number of times, that when you're reviewing the post-conviction court's decision under AEDPA, you don't have to look with a fine-tooth comb at the particular specific legal reasoning, that you're reviewing the rejection of the claim. Was the rejection of this claim contrary to or an unreasonable application of Strickland? And here, if you're reviewing that claim, you look at the Oregon cases that we've cited, the Federal cases as well, even though you only need to look at the Oregon cases, and as a matter of law, it's not a claim that could succeed on appeal. It just is not under Oregon law. So do you concede that Wong has not waived any claims contrary to the finding of the district court? Or what's your position on that? Our position, and I didn't specifically address that, because this is the type of case where the post-conviction, or the district court said he's waived these claims by not providing any argument, but then the district court went on to say, but I'm going to address them on the merits, and here's why they fail. So I think it's not necessary to resolve the issue as it came up in this case. I think technically, probably, it's true, even from just a straightforward preservation standpoint, that if you don't raise arguments to the district court about anything with respect to a certain claim, and then you're on appeal and you raise arguments, you haven't preserved those arguments. And so preservation, they're not they are waived to the extent that they're not preserved. It becomes more difficult, again, if the district court has rule on the merits of the claims. Which the district court did here, right? I'm sorry? Which the district court did. Right. And so then I think it basically, I don't know what the case law says about the specific circumstances where the court has said they're waived, but then rules on the merits. I don't know if there's case law specific to that. I would say with respect to, I mean, and I think it is possible that this Court also could, the argument that opposing counsel has made today clearly was not preserved, and is something that if he had preserved it, the district court might have said something differently. Again, that's sort of a scholastic argument in the sense that, and I just want to keep coming back to this, under Oregon law and under Federal law, it would not have been a valid claim to raise on appeal to challenge the trial court's denial of the motion to contact the jurors unless the evidence that you're talking about is extrinsic evidence that comes from outside trial that nobody is aware of. Now, you're not opposing the motion to file supplemental excerpts, though. Is that correct? No. It's just the supplemental excerpts just contain things that are otherwise in the record already. If I could have a moment, Your Honor. Thank you, Mr. Kirch. So, and just to underscore, I may have said this already, but the cases that counsel is relying on that says that there's an exception to the no deliberate, no questioning juries about deliberation rule, that there's an exception for prior convictions, that's not what those cases say. Other than that, I have nothing else to add. Thank you. Mr. Ellers? I believe I'm out of time. Do you want to take a minute to? Give me a couple of minutes. One minute. I want to just clarify this issue. The court really does need to look at Keating. When I say it's an exception, I was very surprised to read this case because the juror, that issue in the case, knew that the defendant had previously been convicted of the crime for which he was on trial in the federal court for. He told another juror that. That just came in from just jurors talking to jurors. Yeah, but that's not something, this came out in the trial. Right. That's different. No, well, it's not, actually, because when the court rules that it's inadmissible and they should disregard it, it falls into the exact same class of extrinsic evidence, which is extraneous prejudicial information, which can be considered, and there is no 606B bar for that. And this court has repeatedly looked at that issue and found, as I'm describing, I used the shorthand, an exception for prior convictions, because in Keating they talked about, for instance, all of the jurors watching a defendant not testify and then later commenting on it. Is that a habeas case from California? Well, I'm sorry? Is that the habeas case from California, the Keating case, or is this a? Keating is not a habeas case. I think it's a direct review case. Mr. Kine says we're talking about Oregon law here. What's that? Mr. Kine says that this is Oregon law. No, we're talking about the constitutional right to have his Sixth Amendment right to confrontation protected. If a juror is talking about a prior conviction, this court has held it's a Sixth Amendment confrontation clause violation. That's certainly something that should have been raised on direct appeal. I'm going to go take a look at Keating, but you're telling us Keating says that there is a constitutional right to interview witnesses in a case like this. It says that it's a confrontation clause violation for a juror to tell another juror this information, and that's exactly what was happening in this case. Jurors were talking with each other about an excluded piece of extrinsic evidence, which was this very prejudicial prior conviction. I think Keating applies. Okay. Let me ask you one question. I'm sorry to hold you up, but I'm still worrying about this question as to what evidence was or was not in front of the state PCR court. And I've just been told that the reports of the investigators were not in front of the state PCR court. Is that correct? I said that right up front, Your Honor. Make sure that that's right. No, that's correct. How can we even look at them now, given Penholster? Well, let me say this. You don't have a Penholster problem in the case, because you look at what was in the record at the time of the post-conviction court according to Penholster. And in the post-conviction court's record, we both agree that you have the statements of Andrew Johnson from the motion hearing. That's the transcript of the motion hearing for jury investigation. Very important. All the operative facts that are in the excluded memos. And you also have the deposition of Stephen Wong, again, reporting exactly what his lawyer told him. That's all there is. I'm quite sympathetic to Judge Callahan's construction of the court saying there's no evidence. Oh, we've got statements of counsel, and then Wong, who knows nothing independently. Well, I will say this, Your Honor. If you're looking at it from the standpoint that you raised in your question, when the court faults counsel for filing a vague motion with no facts, and then later, next sentence says there's no evidence in the record, and doesn't explain how the court is ruling on facts that are there, like the statements of counsel from the  I think this Court should find that. Statements of counsel are not evidence. What's that? Statements of counsel are not evidence. I will say this, Your Honor. There's not an absence of any evidence of jury misconduct in this case. Thank you. Thank you, gentlemen. Case disargued is submitted. Good morning.
judges: Silverman, Fletcher, Callahan